## Wunsch v. The City of Erie

*S. E. Riley, Jr.* and *Ann Elizabeth Baldwin,* for plaintiffs.

*Donald E. Wright, Jr.* and *Thomas W. Renward,* for defendant.

NYGAARD, *J.,* March 28, 1983—The preliminary objections filed by defendant require this court to decide whether the Political Subdivision Tort Claims

Act, 42 Pa.C.S.A. §8541 et seq., allows an insurance company to bring a subrogation action against a municipality, and if not, whether the act thus violates the U.S. or Pennsylvania Constitutions. For the reasons which follow, the court concludes that the act does not permit such an action, is nonetheless constitutional, and that the insurer's cause of action must be dismissed.

On November 15, 1979, Regina Wunsch was driving her husband Walter's 1973 Plymouth Sebring automobile on Lincoln Avenue in the City of Erie. A Hough payloader owned by the city and operated by a city employee backed into the car, damaging it in the amount of $1,273.35. Wunsch's insurer, Erie Insurance Exchange, (hereinafter Erie) reimbursed him for the damage, less a $250 deductible. By the terms of its policy, Erie became subrogated to Wunsch's claim against the city to the extent of its payment to him.

Wunsch and Erie then began this action under the Tort Claims Act, which provides in §8542(b)(1) that a municipality such as the City of Erie shall be liable for damages caused by the negligent operation of its vehicles. Wunsch seeks recovery of his net loss of $250. Erie Insurance Exchange wishes to recover $1,023.35, the amount to which it is subrogated by virtue of its payment to Wunsch.

The city's demurrer to Erie's cause of action is based on the sovereign immunity contained in §8553(d) of the Tort Claims Act, which states:

If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable, the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

42 Pa.C.S.A. §8553(d). The parties' conflicting interpretations of this language are the root of their disagreement.

More simply, §8553(d) says that recovery on a claim against a local government is limited to the amount of uninsured loss. The city argues that this prohibits actions against municipalities by subrogated insurers. Erie says it has nothing to do with subrogation, but only changes the collateral source rule as it applies to tort claims against municipalities. Erie conceives the purpose of this section as being merely the prevention of a double recovery, and asserts that since double recovery is not a possibility where subrogation exists, the above language should not be read to prevent insurers from pursuing subrogated claims.

The court agrees with Erie that subrogation and the collateral source rule are not identical concepts, but it does not follow from this distinction that abrogating the collateral source rule, which §8553 (d) clearly does in connection with insurance benefits, has no effect on subrogation claims.

The difficulty with Erie's reasoning is that the existence of subrogation prevents double recovery regardless of the effect of §8553(d). With or without this section, an insurer who reimburses an injured policyholder becomes entitled, through subrogation, to seek restitution from third parties. Section 8553(d) does not prevent an insurer from exercising its contractual or equitable rights to become subrogated to any claims of its insured. What it does do, through the mechanism of the collateral source rule, is establish a bar to the enforcement of those claims against a municipality or other local agency. No distinction is made between insured victim and subrogated insurer; a claim for insured losses is not

permitted under this statute, no matter which of the two "owns" it.

Erie further argues, however, that even if §8553(d) does not allow it, as a claimant's subrogee, to sue the city, its subrogation rights nonetheless qualify it as a "claimant" under that section in its own right.

The general rule defining the scope of subrogation rights is that a subrogee possesses no greater rights than its insured. Insurance Company of North America v. Carnahan, 446 Pa. 48, 284 A. 2d 728 (1971). To Erie, this means that upon exercise of its subrogation rights, it acquires rights against the city equal to those of its insured, Wunsch, which it can exercise independently to recoup its own losses. It reasons that since it inherits all the rights of Wunsch, it enjoys the same ability he does under §8553(d) to recover any loss for which it has not been reimbursed by insurance. The amount for which Erie claims it has not been reimbursed is the $1,023.35 it paid to Wunsch in satisfaction of his claim.

Unfortunately, this argument is premised upon a misconception of the subrogation relationship. Rights acquired by subrogation are not independent, but are derivative. Subrogation involves a substitution whereby one who has paid a debt succeeds to the claim of his or her creditor against a third party. Appleman, Insurance Law and Practice, §§4941, 6505; also see Couch on Insurance 2, §61.36. What Erie gets through subrogation is not the right to do for itself what Wunsch can do for himself, but only the right to enforce Wunsch's claim against the city.

Because it has no greater rights than Wunsch, Erie's ability to prosecute his claim against the city

must be subject to any restrictions which would affect Wunsch's ability to bring the action in his own behalf. His claim is limited by §8553(d). Substituting Erie as the claimant through subrogation does not alter or remove this limitation, for:

an alleged subrogee cannot recover in an action brought by the alleged subrogor unless the latter has a cause of action against the defendant, since it is on the subrogor's right of action that recovery must be based . . .

Com. v. Maryland Casualty Company, 369 Pa. 300, 306, 85 A. 2 83, 87 (1952) (citations omitted).

If Wunsch cannot recover from the city that part of his damages for which he has received insurance benefits, then neither can Erie, standing in his shoes, recover that amount.[1] In a case nearly identical to this one, the Court of Common Pleas of Berks County stated, and this court agrees, that "subrogation cannot . . . be used as a vehicle to accomplish indirectly that which is directly prohibited by statute." Aetna Casualty and Surety Company v. Borough of Hamburg, 22 D. & C. 3 454, 458 (1982). Erie is not a claimant within the meaning of the term as used in §8553(d).

Erie cites United States v. Aetna Casualty and Surety Company, 338 US 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), and several North Carolina cases as examples of situations where subrogated insurers have been allowed to maintain actions against

---

1. Erie misunderstands the effect of the real party in interest rule, Pa.R.C.P. 2002. This rule is procedural only, and does not affect substantive rights. Whether or not Erie is a real party in interest or a claimant is determined by the scope of its substantive rights as Wunsch's subrogee, and not the pleading requirements of a procedural rule. 6 Goodrich-Amram 2, §2002(a):2.

government entities. These cases are distinguishable from the present one, however, simply because the statutes involved do not contain limiting language like that in §8553(d).

In one of them, Lyon and Sons, Inc. v. North Carolina State Board of Education, 238 N.C. 24, 76 SE2 553 (1953), the statute in question[2] assigned the State Industrial commission the responsibility of hearing claims against state agencies and paying up to $8,000 per claim in damages. There was no provision affecting the collateral source rule or subrogation, and the limit on the amount of damages was not challenged. In another, General Insurance Company of America v. Faulkner, 259 N.C. 319, 130 SE2 645 (1963), the North Carolina court allowed an insurer who had paid a fire insurance claim to be subrogated to a suit against the parents of an 11-year-old arsonist under a statute which permitted parents of juvenile tortfeasors to be sued for up to $500 in damages. Again, the statute at issue[3] said nothing about collateral sources or subrogation. The insurer had paid the entire claim and there was no challenge to the limit on damages.

U.S. v. Aetna was an action under the Federal Tort Claims Act, 28 USC §1346(b). This act allows the federal government to be sued in "circumstances where the United States, if a private person would be liable to the claimant . . . " For better or for worse, the legislature of this Commonwealth has gone to great lengths, in the Political Subdivision Tort Claims Act, to ensure that Pennsylvania's municipalities are not liable to the same extent as private persons. The legislature has made a public policy decision not to place the burden of reim-

---

2. Ch. 1059, Session Laws N.C. 1951, G.S. §143-291 et seq.
3. North Carolina G.S. §1-538.1.

bursing certain tort victims on possibly uninsured municipalities[4] whose liabilities must be paid for with public funds, but to impose it on private insurers, who are in business to pay the claims of their policyholders.

For, its mechanics aside, the function of §8553(d) has nothing to do with subrogaion or the collateral source rule per se. Its purpose is to limit the amount of damages for which a municipality can be held liable, and is one of several means which the legislature has devised to protect municipalities from what was obviously perceived as a threat of excessive liability.[5] This purpose is clear from an examination of §8553, which is entitled, "Limitations on damages," and is entirely consistent with the rest of that section as well as the legislative intent behind the Tort Claims Act as a whole.[6]

If Erie's position were correct, §8553(d) would be meaningless. It would not serve to limit damages and in fact, would serve no purpose in the statutory scheme whatsoever. A statute must be construed, if possible, to give effect to all its terms. 1 Pa.C.S.A. §1921(a). The legislature is not presumed to have intended provisions of its enactments to be mere surplusage. Masland v. Bachman, 473 Pa. 280, 374 A. 2 517 (1977); 1 Pa.C.S.A. §1922(2) (supp. 1981). Although it does not specifically say that subrogated insurers may not bring claims against municipalities, policy and logic dictate that §8553(d) be given

---

4. Municipal insurance under the Tort Claims Act is not mandatory. Section 8564(a) (42 Pa.C.S.A. §8564(a)) states that "A local agency *may* purchase insurance . . . " (Emphasis added.)

5. See 42 Pa.C.S.A. §8553.

6. See Report of the Joint State Government Commission on Sovereign Immunity, May 1978, pp.19-21.

this interpretation if it is to serve its intended purpose. Accordingly, the court concludes that this section of the Tort Claims Act is a bar to Erie's action against the city, and sustains the demurrer in this respect.

Having determined that §8553(d) prohibits actions against municipalities by subrogated insurers, the court must now consider the constitutional questions raised by plaintiffs. In order to prevail on these claims, Erie must overcome the presumption that laws enacted by the legislature are constitutional. Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A. 2 419 (1981); 1 Pa.C.S.A. §1922(d). In addition, Carroll v. County of York, 496 Pa. 363, 437 A. 2 394 (1981), is a strong indication that §8553(d) is constitutional. While the Supreme Court in Caroll specifically did not consider the validity of the limitation of damages provisions of the Tort Claims Act,[7] the decision is relevant as an affirmation of the well established principle that the legislature has the power to limit or eliminate causes of action,[8] particularly those involving the Commonwealth.[9] Carroll implies that if the legislature can restrict the types of liability to which municipalities may be subjected, it should also be able to control the amount of damages for which municipalities can be liable.

The most stressed of Erie's constitutional claims is that §8553(d) violates the Control Clauses of the

7. Carroll v. County of York, supra., 496 Pa. at 370, 437 A. 2 at 397 (     ) (footnote 4).

8. Id., 496 Pa. at 368-9, 437 A. 2 at 397 (     ); Singer v. Sheppard, 464 Pa. 387, 346 A. 2 897 (1975) (also) concurring opinion of Roberts, J., 464 Pa. at 415-17, 346 A. 2 at _____).

9. Pennsylvania Constitution, Article I, §11; Mayle v. Pennsylvania Dept. of Highways, 479 Pa. 384, 388 A. 2 709 (1978).

federal and Pennsylvania Constitutions. Article I, §10 of the U.S. Constitution commands that "No state shall . . . pass any . . . Law impairing the Obligation of Contracts." Article I, §17 of the Commonwealth Constitution is similar: "No . . . law impairing the obligation of contracts . . . shall be passed."

The U.S. Supreme Court has recently put new teeth into the Contract Clause in the cases of United States Trust Co. v. New Jersey, 431 U.S. 1, 52 L.Ed. 2 92, 97 S.Ct. 1505 (1977) and Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 57 L.Ed. 2 727, 98 S.Ct. 2716 (1978). While the traditional Contract Clause balancing test of police power versus contract rights remains the same,[10] the analysis in the above cases reflects an increased conviction on the part of the court that:

If the Contract Clause is to retain any meaning at all, however, it must be understood to impose some limits upon the power of a State to abridge existing contractural relationships, even in the exercise of its otherwise legitimate police power.

Spannaus, supra., 438 U.S. at 242, 57 L.Ed. 2 at 734, 98 S.Ct. 2716.

Although the court may now be more willing to strike down laws that interfere with contracts, unchanged is the corollary to the above that only contracts in existence at the time the offending legislation is passed are impaired by it. Agreements subsequently made are not affected because they are held to be entered into subject to existing laws. W.B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 79 L.Ed. 1298, 55 S.Ct. 555 (1935); compare Veix v.

---

10. See Garris v. Hanover Insurance Co., 630 F. 2 1001, 1005 (4 Cir. 1980).

Sixth Ward Building and Loan Association of Newark, 310 U.S. 32, 84 L.Ed. 1061, 60 S.Ct. 792 (1940). "The laws in force when a contract is entered into become part of the obligation of contract 'with the same effect as if expressly incorporated in its terms'." DePaul v. Kauffman, 441 Pa. 386, 398, 272 A. 2d 500, 506 (1971), quoting Beaver County Building and Loan Association v. Winowich, 323 Pa. 483, 489, 187 Atl. 481, 484 (1936); Ministers and Missionaries Benefit Board of the American Baptist Churches v. Goldsworthy, 253 Pa. 321, 385 A. 2d 358 (1978).

It follows that the pre-existence of a contract is an element of a cause of action challenging a statute under the contract clause of both the federal and state constitutions.

The court takes notice that automobile insurance policies such as the one Erie issued to Wunsch are generally renewed every six or 12 months. Section §8553(d) was first enacted in 1978 and became effective in January, 1979. Mrs. Wunsch's collision with the payloader occurred on November 15 of that year. It is therefore possible that Wunsch's policy with Erie was not in effect when §8553(d) became law, or that if he was insured with Erie at that time, the policy was renewed subsequent to the date the statute took effect. If either is the case, then the contract between Erie and Wunsch was formed subject to the limitations of the Tort Claims Act and is not a contract the obligations of which can be impaired by §8553(d).

"One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.

Spannaus, supra., 438 U.S. at 241-2, 57 L.Ed. 2 734, 98 S.Ct. 2716, quoting Holmes, J., in Hudson Water Co. v. McCarter, 209 U.S. 349, 357, 52 L.Ed. 828, 28 S.Ct. 529 (1908).

The plaintiff's complaint alleges only that Wunsch was insured at the time of the accident. It does not claim that his policy, without renewal, was in effect before the passage of §8553(d). The pleading does not set forth the necessary elements of a cause of action for impairment of a contractual obligation under Article I, §10 of the federal Constitution or Article I, §17 of the Pennsylvania Constitution. Because a cause of action is not stated, the merits of this constitutional issue need not be considered, and the city's demurrer to the Contract Clause claims is sustained.

Erie next argues that the bar to subrogation actions set up by §8553(d) constitutes an illegal taking of property under the 5th Amendment to the U.S. Constitution and Article I, §10 of the Pennsylvania Constitution.

There is no formula for determining when government restriction of the use of private property is severe enough to require compensation. The Supreme Court has stated that:

whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely "upon the particular circumsances (in that) case."

Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124, 57 L.Ed. 2 631, 648, 98 S.Ct. 2646 (1978). Some important factors are:

The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant con-

siderations. . . . So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characerized as a physical invasion by government, . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

Id., (citations omitted). Balanced against the need to protect private property rights is the realization that:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413, 67 L.Ed. 322, 43 S.Ct. 158, 28 ALR 1321 (1922).

Id.

There is no question that §8553(d) prevents Erie from fully exercising its subrogation rights. It, and other insurers, can no longer recover benefits paid by them to their policyholders when the liable third party is a local government. Erie's property rights in its subrogated claims are, to this extent, taken, and its expected returns from its policy investments are frustrated. However, the significance of this loss is diminished since not all subrogated claims against municipalities or other local agencies and because, in general, not all claims against tortfeasors are successful.

The court does not know what percentage of insurers' subrogation claims are affected by §8553(d), but makes an educated guess that it is far less than the total number of such claims. If this is so, the loss of the ability to sue governmental tortfeasors only is hardly the "complete destruction" of subrogation rights which Erie alleges has occurred.

Compare Andrus v. Allard, 444 US 51, 62 L.Ed. 2 210, 100 S.Ct. 318 (1979). Claims against non-governmental tortfeasures may be defeated in any number of ways; by a statute of limitations, for example, see Insurance Company of North America v. Carnahan, supra., or by comparatively greater negligence on the part of an insured, see 41 Pa. C.S.A. §1702.

Further-diminution follows from the fact that Erie, like any other insurer, is free to adjust its rates to reflect changes in its business environment.[11] One of the reasons insurers limit the terms of their policies is to enable themselves to make necessary changes in the rates they charge. If social, economic or legal events adversely affect an insurer's financial position, it may adjust its rates accordingly. This ability to compensate for the loss of its property rights mitigates the harm caused by §8553(d). Added to the importance given by the legislature to protecting local governments from excessive tort liability, it leads the court to conclude that §8553(d) does not effect an illegal taking of Erie's property rights under the Federal or Commonwealth Constitutions. The city's demurrer is sustained as to these claims.

Erie also asserts that the bar to subrogation suits in §8553(d) violates both the Due Process and Equal Protection Clauses of the 14th Amendment to the Federal Constitution.

As earlier stated, the purpose of §8553(d) is to shield municipalities from excessive tort liability.

---

11. The court acknowledges that insurance is a regulated industry in the Commonwealth, but even regulated enterprises are allowed reasonable profits.

It is part of a comprehensive scheme which balances private rights and public needs in connection with tort claims against local governments. The Tort Claims Act is a rational approach to this subject, and a rationally based legislative judgment does not violate the Due Process Clause. Williamson v. Lee Optical Co., 348 U.S. 483, 99 L.Ed. 563, 15 S.Ct. 461 (1955); Carroll v. County of York, supra. The apparently heightened level of scrutiny in the recent Contract Clause cases does not require a similar review here.

United States Trust v. New Jersey and Allied Structural Steel v. Spannaus, both supra., do not elevate contract rights to the fundamental status needed to sustain a claim under the Equal Protection Clause. New Orleans v. Dukes, 427 U.S. 297, 49 L.Ed. 2 511, 96 S.Ct. 2513 (1967). Nor does Erie establish the existence of a suspect classification which would require a closer examination of §8553(d). See U.S. Railroad Retirement Board v. Fritz, 449 U.S. 166, 66 L.Ed. 2 368, 101 S.Ct. 453 (1980); Reed v. Reed, 404 U.S. 71, 30 L.Ed. 2 225, 92 S.Ct. 251 (1971). Lacking either of these, the rational basis of §8553(d) and the Tort Claims Act is sufficient to satisfy the demands of the Equal Protection clause. The demurrer is sustained as to these claims, too.

The sovereign immunity granted to Political Subdivisions by 42 Pa.C.S.A. §8553(d) does not violate the taking, Due Process, or Equal Protection clauses of the Federal or Pennsylvania Constitutions. Erie has not made out a claim under the Contract Clause of either Consitution, and §8553(d) is a complete bar to Erie's action against the city.

## ORDER

And now, March 20, 1983, the City of Erie's demurrer to the cause of action of Erie Insurance Exchange is sustained on both statutory and constitutional grounds, except for the Contract Clause claims, on the basis of sovereign immunity. The demurrer is sustained as to the Contract Clause claims for failure to plead a claim. Erie Insurance Exchange's cause of action is dismissed in its entirety. Plaintiffs are given leave to amend their complaint to state their cause of action under the Contract Clauses of the U.S. or Pennsylvania Constitutions, if any.