Brian **WARNER**, a minor by his parent and natural guardian Keith **WARNER**, Appellant

v.

Daniel **LAWRENCE** and World Communication Charter School.

Commonwealth Court of Pennsylvania.

Argued March 1, 2006.

Decided June 2, 2006.

Lawrence Solomon, Philadelphia, for appellant.

David P. Karamessinis, Philadelphia, for appellee, World Communication Charter School.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Appellant, Brian Warner, a minor by his parent and natural guardian Keith Warner (hereinafter referred to as "Warner"), appeals from an order of the Philadelphia County Court of Common Pleas (trial court) granting summary judgment in favor of World Communication Charter School (WCCS), and dismissing Warner's negligence claims against WCCS. The issue before this Court is whether the Charter School Law (CSL)[1] grants a charter school the same governmental immunity that political subdivisions and local agencies enjoy under, what is commonly referred to as, the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541—8542.[2]

The relevant facts are as follows. WCCS is a charter school created pursuant to the CSL. Warner alleges that he was injured while retrieving items from his locker, by Daniel Lawrence, another student, when Daniel "was running around the hallway chasing another student." (Compl.¶ 6.) Warner filed a complaint alleging negligent conduct on the part of Daniel Lawrence and WCCS. He alleges that WCCS was negligent for failing to post monitors in the hallways at the time of his injury, in light of the fact that there was a history of student "horseplay and rough housing" in the hallways.

On January 5, 2004, WCCS filed a motion for summary judgment on the basis that Section 1714–A(a)(2) of the CSL[3] provides that a charter school may sue or be sued, "but only to the extent and upon the same condition that political subdivisions and local agencies can be sued." For this reason, WCCS claimed immunity pursuant to Section 8541 of the Tort Claims Act, 42 Pa.C.S. § 8541.[4] The trial court agreed

---

1. Act of March 10, 1949, P.L. 30, *as amended,* added by the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A—17–1751–A.

2. This case was transferred to this Court from the Superior Court of Pennsylvania on September 20, 2005.

3. Added by Section 1 of the Act of June 19, 1997, P.L. 225, *as amended,* 24 P.S. § 17–1714–A(a)(2).

4. Section 8541 of the Tort Claims Act, 42 Pa.C.S. § 8541, expressly provides that, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

and, by order dated March 26, 2004, granted WCCS's motion for summary judgment.[5]

On April 12, 2004, Warner filed a motion claiming that WCCS was not a political subdivision or local agency, and requested certification of the trial court's order as a final and, therefore, appealable order pursuant to Pa. R.A.P. 341(c).[6] On April 26, 2004, the trial court issued an order granting Warner's motion for certification. Subsequently, Warner filed a timely appeal and a Rule 1925(b) "statement of matters complained of on appeal." *See* Pa. R.A.P.1925(b). The trial court addressed these contentions in an opinion supporting its order granting summary judgment in favor of WCCS. *See* Pa. R.A.P.1925(a).

The trial court stated that it granted summary judgment in favor of WCCS because it found that none of the exceptions set forth in Section 8542 of the Tort Claims Act were applicable to Warner's theory of negligence against WCCS. (Trial Ct. Op. at 1–2.) Additionally, the trial court addressed Warner's contention that

any legislative attempt to restrict a plaintiff's right to sue and to grant charter schools immunity, found in Section 1714–A(a)(2) of the CSL, is unconstitutional. The trial court, relying on our Supreme Court's decision in *Carroll v. County of York*, 496 Pa. 363, 437 A.2d 394 (1981), stated that it "has [been] frequently recognized that the legislature may limit liability on the basis of a defendant's status." (Trial Ct. Op. at 2.) The trial court then went on to define the term "charter school" and the authority and duties that charter schools are given to undertake. (Trial Ct. Op. at 3.) The trial court concluded by stating that "[g]iven the fact that charter schools are the creation of the legislature, and the importance of [their] functions ... in fulfilling the government's responsibility for providing public education, the court finds that legislative immunity referred to in [Section 1714–A(a)(2) of the CSL] is constitutional." (Trial Ct. Op. at 3–4.)

On appeal,[7] Warner argues that WCCS, as a charter school, is not entitled to the

5. There are exceptions to the grant of immunity in the Tort Claims Act. Specifically, Section 8542 of the Tort Claims Act provides that a local agency shall be liable for damages if: (1) the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having a defense available under Section 8541 or 8546; and (2) the injury was the cause of a negligent act of the local agency or an employee thereof acting within the scope of his or her office or duties with respect to one of a specified category of acts. 42 Pa. C.S. § 8542(a). Those "negligent acts" consist of vehicle liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; care and control of animals; and the dangerous conditions of streets and sidewalks. 42 Pa.C.S. § 8542(b). The parties agree that the allegations here would not fall within any of these exceptions.

6. Rule 341(c) provides that the trial court can certify an order for immediate appeal upon

an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. Pa. R.A.P. 341(b)(3),(c).

7. As succinctly stated by the Superior Court in *Vitow v. Robinson:*

> This Court's scope of review is plenary when reviewing the propriety of a trial court's entry of summary judgment. Summary judgment is appropriate where there is no genuine issue of any essential fact and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035.2(1). In considering the motion, the trial court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party, who bears the burden of proving there is no genuine issue of material fact. An appellate court will reverse an order granting summary judgment only where there has been an error of law or clear abuse of discretion. 823 A.2d 973, 976 (Pa.Super.2003) (quoting *Al's Cafe, Inc. v. Sanders Insurance Agency,*

same immunity from liability as a local agency under the Tort Claims Act for two reasons: first, Warner argues that the CSL does not grant tort immunity to charter schools; and second, Warner believes such a grant would be unconstitutional by violating the Open Courts provision found in Article I, Section 11 of the Constitution of the Commonwealth of Pennsylvania.

A "charter school" is defined by the CSL as "an independent public school established and operated under a charter from the local board of school directors [and] must be organized as a public, non-profit corporation...." 24 P.S. § 17–1703–A. The CSL makes clear that charter schools are exempt from certain regulatory requirements, but are not otherwise exempt from statutes applicable to public schools. 24 P.S. § 17–1715–A(1). A charter school is held accountable to parents, the public and the Commonwealth. 24 P.S. § 17–1715–A(2). Section 1714–A of the CSL sets forth the powers of charter schools by stating, among other things, that a charter school can "[s]ue and be sued, *but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued.*" 24 P.S 17–1714–A(a)(2) (emphasis added). Finally, Section 1727–A of the CSL, entitled "Tort liability," provides:

> For purposes of tort liability, employes of the charter school shall be considered public employes and the board of trustees shall be considered the public employer in the same manner as political subdivisions and local agencies. *The board of trustees of a charter school and the charter school shall be solely liable for any and all damages of any kind resulting from any legal challenge involving the operation of a charter school.* Notwithstanding this require-

ment, the local board of directors of a school entity shall not be held liable for any activity or operation related to the program of the charter school.

24 P.S. § 17–1727–A (emphasis added).

Warner first argues that the "tort liability" section of the CSL, Section 1727–A, specifically provides that charter schools, themselves, are not immune from liability because the section states that "charter school[s] shall be solely liable for any and all damages ... resulting from any legal challenge...." 24 P.S. § 17–1727–A. Warner contends that Section 1714–A of the CSL does not, in fact, create immunity because: (1) had the legislature wanted to protect charter schools with immunity, it would have referenced it in Section 1727–A, which deals with "tort liability"; and (2) Section 1714–A logically is limited to contractual scenarios.

■■■■ We disagree with Warner's assertion that Sections 1714–A and 1727–A of the CSL cannot be reconciled. Because they relate "to the same persons or things or to the same class of persons or things," these particular sections of the CSL are to be read *in pari materia.* 1 Pa.C.S. § 1932(a). The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* provides that, "[s]tatutes *in pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932(b). Read together, section 1714–A sets out the parameters of a cause of action, while Section 1727–A provides the particular entity that can be sued. In other words, when read together, Section 1714–A provides *how* a charter school can be sued under the CSL, while Section 1727–A identifies *who* at a charter school can be sued, for purposes of tort liability, under the CSL, generally, as a party to an action involving the charter

820 A.2d 745, 748 (Pa.Super.2003)). Therefore, absent a manifest abuse of discretion or

an error of law, we will uphold the trial court's determination.

school. We find that these sections are not inconsistent with each other. Rather, they support the legislative intent to treat charter schools, in terms of suing and being sued in tort, in the same manner that political subdivisions and local agencies can be sued and, at the same time, insulating the local school board of directors from liability for any and all acts of a charter school or its board of trustees. Therefore, we find the CSL does intend to grant immunity to charter schools in the same manner as political subdivisions and local agencies.

■ Warner next briefly argues that it would be unconstitutional, under the Open Courts provision of the Pennsylvania Constitution,[8] for the legislature to grant immunity to a charter school because a charter school can be "established by an individual, teacher, parent, any non-sectarian, nonprofit corporation." (Warner Br. at 15–16.) His argument on this issue, in its entirety, is:

> It is inconceivable that the legislature would allow a charter school [to] be immune from liability. It is inconceivable that each one of these schools which may be formed by any one of the above people can be considered a political subdivision. Although education is a lofty goal, the granting of immunity from tort actions to disparate individuals and entities who are given wide powers should be deemed to be legislation for the benefit of private persons and to grant these entities immunity would be a denial of

the public's right to seek redress of tortuous [sic] harm in a court of law.

(Warner's Br. at 16.)

■ We recognize that there is a presumption of constitutional validity to legislative enactments. 1 Pa.C.S. § 1922. A party challenging such an enactment bears a heavy burden in establishing that the enactment is unconstitutional, and all doubts are to be resolved in favor of finding constitutionality. *Commonwealth v. Aponte*, 579 Pa. 246, 250–51, 855 A.2d 800, 803 (2004), *cert. denied*, 543 U.S. 1063, 125 S.Ct. 886, 160 L.Ed.2d 792 (2005).

The constitutionality of the Tort Claims Act and its grant of immunity have been upheld by our Supreme Court in *Carroll*. There, the mother of a deceased son brought wrongful death and survival claims against a county for negligently contributing to the death of her son, who committed suicide while in the custody of the county detention home. The county home filed preliminary objections asserting immunity under the Tort Claims Act, and the mother responded by challenging the constitutionality of the Tort Claims Act. The Supreme Court held that the constitutional provision permitting the Legislature to direct the manner in which law suits could be brought against the Commonwealth is "needed for the operation of local government." *Id.* at 370, 437 A.2d at 397. The Court noted that, "[s]urely the Legislature's authority 'to choose cases in which the Commonwealth should be immune' encompasses political subdivisions" because "[m]unicipal corpo-

---

8. The portion of the Open Courts provision quoted by Warner reads:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

(Warner Br. at 15 (quoting Pa. Const. Art. I, § 11)). The remaining portion of this section,

which references immunity, provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. Art. I, § 11. Warner does not quote or discuss this immunity portion of Article I, Section 11 of the Pennsylvania Constitution.

rations are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy." *Id.* at 367, 437 A.2d at 396 (quoting *City of Pittsburgh v. Commonwealth of Pennsylvania,* 468 Pa. 174, 179, 360 A.2d 607, 610 (1976) (citation omitted)). Thus, the Court held that the Tort Claims Act is a valid exercise of legislative authority and not unconstitutional in failing to provide a remedy for injuries caused by a municipality. *Id.* at 370, 360 A.2d 607, 437 A.2d at 398.

The Supreme Court, in *Carroll,* also recognized that the Legislature may permissibly limit liability on the basis of a defendant's status. For example, in *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978), the Supreme Court held that there was no constitutional violation where the Legislature provided that a builder's tort liability for negligent work would terminate twelve years after completion of a structure despite the fact that others, such as suppliers of property, were not given the same immunity. The Court explained its deference to legislatively crafted or limited remedies when it stated:

> This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain nonconstitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law.

*Freezer Storage,* 476 Pa. at 281, 382 A.2d at 721.

In the absence of a clear legislative intent that an entity be covered by governmental immunity, such as we have here, the courts have examined various characteristics to determine whether the entity comes within the Tort Claims Act. For example, in *Community College of Allegheny County v. Seibert,* 144 Pa.Cmwlth. 616, 601 A.2d 1348 (1992), this Court held that community colleges are local agencies entitled to immunity under the Tort Claims Act. In so finding, this Court stated that, in addition to being sponsored solely by political subdivisions, community colleges possess other characteristics which weigh in favor of finding immunity, such that community colleges are "expressly granted the right to participate in various other statutory schemes which are normally reserved for political subdivisions." *Id.* at 1351–52. The Court noted, as an example, that the statute governing community colleges provides that they shall be eligible for participation in the "State Public School Building Authority Act and the Municipal Authorities Act of 1965." *Id.* at 1352 (footnotes omitted). Furthermore, in addition to being a tax-supported institution created by local government units under a grant of authority by the Legislature, the Court noted that "employees of community colleges are eligible for inclusion in the Public School Employees' Retirement System of Pennsylvania and the Pennsylvania State Employees' Retirement System." *Id.*

Similarly, in *Sphere Drake Insurance Co. v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510 (2001), our Supreme Court found that a non-profit corporation, which was incorporated by city officials to provide management services for city-owned Philadelphia Gas Works (PGW), was immune from tort liability under the Tort Claims Act. In so holding, the Court again evaluated factors to determine

whether the entity was so intertwined with the city that it was only logical that it be a local agency. Those determining factors were: the entity existed solely to assist the city in meeting the needs of the citizens; the city created the entity, appoints its Board of Directors and exercises substantial control over it; the assets of the entity would ultimately vest in the city upon its dissolution; the entity's employees participate in the deferred compensation and benefit plans that are exclusively for city employees; the entity's sole source of income is the management fee paid by the city; and, the city is obliged to indemnify the entity's directors, officers, and employees, and hold them harmless from all claims and liability arising in connection with its management and operation of PGW. *Id.* at 550–51, 782 A.2d at 516.

Our Court, in *Burcik v. Caplen*, 805 A.2d 21, 26 (Pa.Cmwlth.2002) (rejecting a "policy-based per se rule focusing on the fact and method of incorporation, to the exclusion of other factors"), *vacated*, 577 Pa. 521, 847 A.2d 56 (2004) (remanding to trial court for consideration of the governmental immunity issue in light of its decision in *Sphere Drake*), utilized the *Sphere Drake* "pragmatic approach" to determine that the Board of Directors of City Trusts, which oversaw charitable trusts of a city, was a local agency entitled to immunity under the Tort Claims Act. There, the Court stated that analyzing statutory language, while an important factor, is not dispositive and, therefore, it looked to other factors to determine what constitutes a local agency. The Court noted that private wealth was transformed, by bequest and its acceptance into city property, and, pursuant to enabling legislation, the city administered the trust and operated a college as part of its municipal duties. *Id.* at 28–29. Consequently, the Board was created by the General Assembly to perform those duties for the city and was explicitly

deemed to be an agent of the city as a local agency under the cloak of the city's tort immunity. *Id.* at 29. Thus, this Court held that the Board, in administering the college on behalf of the city, was immune from tort liability under the Tort Claims Act.

Additionally, this Court, in *Green Valley Dry Cleaners, Inc. v. Westmoreland County Industrial Development Corp.*, 832 A.2d 1143 (Pa.Cmwlth.2003), also utilized the analysis in *Sphere Drake* in holding that a vendor, a nonprofit economic development corporation which had been established by the county to promote economic development, was a "local agency" entitled to immunity for negligence and breach of contract under the Tort Claims Act. This Court stated that even if it were necessary to go beyond the statutory scheme and look to the "other factors"— such as the relationship between the vendor and the county—this Court would be further convinced that the vendor is a local agency under the Act. *Id.* at 1152. Those factors include the fact that the vendor was created by the county pursuant to its Articles of Incorporation; has a civic purpose to create economic development in the county and to create jobs for its citizens; is controlled by the county through the county commissioners who automatically serve as its Board of Directors, which holds public meetings; is included in the county's telephone directory and appears on the county's website as a county department; has the ability to interchange personnel and share expertise with the county's Department of Planning and Economic Development; is closely linked to the county's purse because the vendor's budget is incorporated in the county's annual budget and the county finances the vendor's operations through grants; does not file an income tax return because it is a government, non-profit cor-

poration; and, is identified as an additional insured on the county insurance police's, and should the vendor's business fail, its assets would revert back to the county. *Id.* at 1152–54. Furthermore, the vendor's day-to-day activities are intertwined with the county because it conducts business only in the county and for the benefit of county residents, space is provided by the county, and employees are treated comparably to other county employees. *Id.* Therefore, for all of these reasons, this Court held that the vendor was a local agency entitled to immunity under the Tort Claims Act.

In this case, unlike those just discussed, the *statute* provides that a charter school is entitled to immunity. This legislative intent is permissible because charter schools possess many of the same characteristics which we have just shown courts have looked at in determining that an entity is a local agency. For instance, the CSL defines a charter school as **"an independent public school** established and operated under a charter **from the local board of school directors** and in which students are enrolled or attend." 24 P.S. § 17–1703–A (emphasis added). Similar to the entities described in *Sphere Drake* and *Green Valley Dry Cleaners,* the local school board exercises substantial control over its existence in that, in order to establish a charter school, an application **for approval** must be **submitted to the local board of school directors of the public school district** where the charter school will be located. 24 P.S. 17–1717–A(c). Not only are charter schools "not exempt from statutes **applicable to public schools** other than [as provided in the CSL]," 24 P.S. § 17–1715–A(1) (emphasis added), but charter schools are also directly **funded** by tax dollars from the **local school district.** 24 P.S. § 17–1725–A; *see also, Seibert; Sphere Drake; Green Valley Dry Cleaners.* Additionally, the CSL pro-

vides **numerous checks and balances by the Commonwealth,** such that charter schools are accountable to the Commonwealth, parents, and the public; may have their charters revoked; must participate in the State Assessment Program; and, must have the local school board annually assess each charter school within its district. 24 P.S. §§ 17–1715–A(2); 17–1715–A(8); 17–1729–A(a)(2); 17–1728–A. Furthermore, like the entity in *Sphere Drake* which intended to assist the public, the intent of the CSL is to provide for the opportunity to establish charter schools, which operate independently from the existing school district structure, to assist in **meeting the needs of the students in a local school district.** These charter schools are established as a method of accomplishing the following:

(1) Improve pupil learning.

(2) Increase learning opportunities for all pupils.

(3) Encourage the use of different and innovative teaching methods.

(4) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site.

(5) Provide parents and pupils with expanded choices in the types of education opportunities that are available within the public school system.

(6) Hold the schools established under this act accountable for meeting measurable academic standards and provide the school with a method to establish accountability systems.

24 P.S. § 17–1702–A(1)–(6). Thus, the relationship between a charter school and a public school are closely "intertwined." *Sphere Drake.*

▉▉▉ Given this background and case law, we find that Warner has not met his burden to prove that the legislative limita-

tion of tort liability on charter schools is unconstitutional. Warner does not discuss: (1) the history of the Constitutional provision, including cases applying and interpreting it; (2) case law from other states discussing similar provisions; or (3) policy considerations arising from this section; the Pennsylvania Supreme Court has established each of the above factors as issues to be briefed and discussed by a party when the party's arguments implicate a particular Pennsylvania Constitutional Provision. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).[9] Warner has also failed to notify the Attorney General of his constitutional challenge, which, pursuant to Pa. R.C.P. 235, he would have been required to do before presenting the issue to the trial court and, pursuant to Pa. R.A.P. 521, he would have been required to do as part of this appeal.[10] Given the arguments presented be-

fore this Court, we find that Warner has failed to meet the burden of proving that Section 1714–A of the CSL violates Article I, Section 11, of the Pennsylvania Constitution.

Accordingly, we hold that the trial court was correct in granting summary judgment in favor of WCCS and finding that WCCS is entitled to governmental immunity under the Tort Claims Act.

## ORDER

**NOW,** June 2, 2006, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

9. Although failure to address each of these items is not necessarily a fatal defect, the Supreme Court has repeatedly reiterated that discussion of each of these issues is helpful in addressing a constitutional argument. *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995) (noting that challenger's citation to precedent provided sufficient basis to conduct review of his Pennsylvania Constitutional argument); *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957 (1995) (noting in dicta that *Edmunds* factors are "helpful" but not mandatory). While Warner is not required to satisfy each of these *Edmunds* elements, his failure to address any of these elements does not provide the Court with authority on which to grant the relief he requests.

10. Pennsylvania Rules of Appellate Procedure, Rule 521(a), provides that:

(a) **Notice.** It shall be the duty of a party who draws in question the constitutionality of any statute in any matter in an appellate Court to which the Commonwealth ... is not a party, upon the filing of the record, or as soon thereafter as the issue is raised in the appellate court, to give immediate notice in writing to the Attorney General ... and to file proof of such notice.

Pa. R.A.P. 521. There is no indication in the docket that any such notice was filed. While we note that such notice is necessary only in facial challenges, and not in "as applied" challenges, *see Kepple v. Fairman Drilling Co.*, 532 Pa. 304, 615 A.2d 1298 (1992), we also note that a litigant's characterization of an argument as being facial or "as applied" is not controlling. *Id.*

In this case, although Warner seems to structure his constitutional argument as an "as applied" argument, specifically, that if the Court interprets the statute to apply governmental immunity to a charter school, the Open Courts provision is being applied unconstitutionally, it seems that he is also challenging the statute on its face. For example, in Warner's brief before the trial court, he argued that "the legislature is not empowered to give private or special interests immunity even if they are open to [sic] public as many business[sic] are.... The legislature does not have the power to give a charter school special immunity under the Constitution of the Commonwealth of Pennsylvania." (Warner's Memorandum of Law in Reply to WCCS Motion for Summary Judgment at 4.) As such, Warner needed to provide the Attorney General with notice of his claim.