IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hannah Babb,                               :
                         Appellant         :
                                           :
            v.                             :
                                           :
Lynn Plusa, RN BSN, CSN and                :
Debbie Tancredi, RN and                    : No. 1199 C.D. 2015
Pennsylvania Virtual Charter School  : Argued: December 10, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
          HONORABLE MARY HANNAH LEAVITT, Judge[2]
          HONORABLE P. KEVIN BROBSON, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI                   FILED: January 6, 2016


            Hannah Babb (Plaintiff) appeals from an order of the Court of

Common Pleas of Centre County (trial court) granting a motion for judgment on

the pleadings filed by Lynn Plusa, RN BSN, CSN (School Nurse Plusa), Debbie

Tancredi, RN (Nursing Director Tancredi), and Pennsylvania Virtual Charter

School (PVCS) (collectively, Defendants) with respect to Plaintiff's 42 U.S.C.

§1983 action.   The order also rendered final an interlocutory order granting

---

[1] This matter was assigned to this panel before January 1, 2016, when President Judge
Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge
Leavitt became President Judge.

Defendants' preliminary objections with regard to Plaintiff's negligence claim on the basis of Defendants' immunity.  For the reasons that follow, we affirm the trial court's order.

## I.

Plaintiff filed an amended complaint against Defendants alleging that in April 2008, Plaintiff's seventh grade PVCS physical examination was performed by PVCS School Nurse Plusa who, despite the mandates of 42 Pa. Code §23.10(b),[3] negligently failed to perform a scoliosis screening and failed to maintain the associated records.  Plaintiff also included a claim under 28 U.S.C. §1983[4] averring that Defendants "acted in a grossly negligent manner with callous

---

[3] The regulation requires that "[a] scoliosis screening test shall be administered to students in grade six and grade seven and to age-appropriate students in ungraded classes."  28 Pa. Code §23.10(b).

[4] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983.
**(Footnote continued on next page…)**

indifference to the known and foreseeable harm which the scoliosis screening mandate was expressly designed to prevent in violation of rights protected by 42 U.S.C.S. [*sic*] § 1983 and express regulatory requirements imposed concomitant with the other rights and powers delegated to [PVCS]." (Reproduced Record [R.R.] at 96a.)

Pursuant to the Defendants' preliminary objections, the trial court dismissed Plaintiff's negligence claim, determining that PVCS is immune from liability under Section 8541 of the Political Subdivision Tort Claims Act (Tort Claims Act),[5] and that said immunity extended to School Nurse Plusa and Nursing Director Tancredi as PVCS employees working within their scope of employment. With respect to Plaintiff's civil rights claim, the trial court found that Plaintiff did not define the constitutional or federal statutory right allegedly violated and, therefore, sustained Defendants' preliminary objection to this count but granted Plaintiff leave to file a second amended complaint.[6]

In her second amended complaint, Plaintiff stated that her parents opted to enroll her in PVCS "as an exercise of Parental rights with regard to First

---

**(continued…)**

[5] Section 8541 of the Tort Claims Act states, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541.

[6] Although Plaintiff's negligence claim was dismissed, she nonetheless included it in her second amended complaint and simultaneously filed a motion for reconsideration of the trial court's order dismissing the same, which was denied.

Amendment rights regarding inculcation of religious and political rights" and that as a result of this election, Plaintiff received medical services from PVCS which were "separate and unequal from those who did not exercise those rights." (R.R. at 148a.) Again, Plaintiff alleged that in April 2008, her seventh grade PVCS physical examination was performed by PVCS School Nurse Plusa who failed to perform a scoliosis screening in violation of 28 Pa. Code §23.10(b). She further asserted that Nursing Director Tancredi failed to fulfill her duty of managing all school nurses employed with PVCS and ensuring that all pupil health rules and regulations were followed in this respect. Plaintiff also averred that when her parents requested her screening records in July 2009, Nursing Director Tancredi "sent a false and deceptive cover letter indicating that [School Nurse Plusa] 'deferred' the mandated scoliosis screen[ing] on [Plaintiff] because of a prior screening." (*Id.* at 137a.)

With regard to her 42 U.S.C. §1983 claim, Plaintiff alleged:

132. Defendants jointly and severally violated Plaintiff's First (parental religion and political speech rights regarding the Plaintiff), Tenth, Eleventh, and Fourteenth Amendment Rights to Equal Protection of laws, by directing compulsory attendance in an approved and licensed school, and then providing Separate and Materially Unequal services to students who exercised political and religious rights under the First Amendment.

133. Defendants also violated [P]laintiff's Eighth Amendment Rights by subjecting Plaintiff to the prospect of severe preventable injury through gross medical negligence in a custodial care setting.

4

(*Id.* at 147a–148a.)

Subsequently, Defendants filed a motion for judgment on the pleadings, contending that Plaintiff's second amended complaint failed to articulate a claim for which relief may be provided under 42 U.S.C. §1983 because it did not identify rights defined or protected by the United States Constitution or federal statute and because the individual Defendants are entitled to qualified immunity.

Following oral argument, the trial court issued an opinion and order granting Defendants' motion, finding that Plaintiff failed to demonstrate a violation of her constitutional rights under the First or Eighth Amendment. Regarding Plaintiff's equal protection claim, the trial court determined that the second amended complaint failed to assert that Defendants classified individuals or purposefully provided different treatment to different classes of individuals, and that Plaintiff failed to link her decision to attend PVCS with her alleged unequal treatment in not receiving a scoliosis exam in seventh grade, particularly when cyber school students are treated the same as traditional students for purposes of the scoliosis exam under 28 Pa. Code §23.10(b).

Further, the trial court found that to the extent Plaintiff made a "class of one" equal protection claim, it failed because Plaintiff did not aver intentional or purposeful discrimination. In terms of Plaintiff's Eighth Amendment claim, the trial court explained that medical protections under this provision apply only to "situations based on a custodial relationship formed by confinement, notably prisoners and the involuntarily committed," and do not apply merely because

5

Plaintiff was compelled to attend school due to compulsory attendance laws. (4/30/15 Trial Court Opinion, at 6.)[7] This appeal followed.

## II.

## A.

On appeal,[8] Plaintiff first contends that the trial court erred in dismissing her negligence claim on the basis of governmental immunity. Specifically, she argues that the trial court erred in determining that PVCS enjoys categorical immunity as a local agency rather than analyzing PVCS's characteristics to determine whether it falls within the purview of the Tort Claims Act based on the degree to which it is intertwined with the local school district. Conversely, Defendants assert that the trial court was not required to perform the factual inquiry advanced by Plaintiff because this Court has already made clear that charter schools enjoy the same governmental immunity as do political subdivisions and local agencies. We agree with Defendants.

---

[7] Because the trial court determined that Plaintiff failed to set forth a claim for relief under 42 U.S.C. §1983, it did not reach the issue of whether the individual Defendants were entitled to qualified immunity on this claim.

[8] Our review of a trial court's decision granting a motion for judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether unresolved questions of material fact remain. *Pfister v. City of Philadelphia*, 963 A.2d 593, 596 n.7 (Pa. Cmwlth. 2009). Our scope of review is plenary. *Id.* In ruling upon a motion for judgment on the pleadings, a court may consider only the pleadings and their attachments, and all allegations made by the non-moving party are accepted as true. *Id.* at 597. Where there exist material issues of fact, judgment on the pleadings is improper. *Id.*

6

In *Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania,* our Supreme Court explained that the "Tort Claims Act's purpose is to limit the government's liability for its tortious acts." 985 A.2d 909, 913 (Pa. 2009). To be entitled to immunity under the Tort Claims Act, one of two prongs must be satisfied: (1) "the entity meets the statutory definition of 'local agency'"; or (2) "the entity is so intertwined with government that extending immunity to the entity would serve the purposes of the Tort Claims Act." *Id.* at 914.

Reasoning that the entity in that case did not satisfy the first prong, the Court continued to address the second prong based upon whether:

> (1) a political subdivision created the entity; (2) the entity assists a political subdivision in serving its citizens; (3) a political subdivision appoints the entity's board of directors; (4) a political subdivision exercises substantial control over the entity; (5) the entity's assets would vest in a political subdivision if the entity were to be dissolved; (6) the entity's employees participate in any benefit plans exclusively reserved for employees of political subdivisions; (7) the entity's sole source of income is a political subdivision; and (8) a political subdivision indemnifies the entity, its employees, officers, and directors from claims and liabilities arising from services the entity provides.

*Id.*

Similarly, in *Warner ex rel. Warner v. Lawrence*, the trial court granted the World Communication Charter School's motion for summary judgment against a student who asserted negligence claims against it on the basis

7

of immunity under the Tort Claims Act. 900 A.2d 980, 982 (Pa. Cmwlth. 2006) (*en banc*). On appeal, we addressed the student's contention that a charter school is not entitled to the same immunity from liability as a local agency under the Tort Claims Act because the Charter School Law (CSL)[9] does not grant tort immunity to charter schools. Noting that Section 1714-A of the CSL enables charter schools to "[s]ue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued," 24 P.S. §17-1714-A(a)(2), and that Section 1727-A of the CSL[10] rendered the board of trustees of a charter school and the charter school solely liable for all damages resulting from the charter school's operation, we found legislative intent to "grant immunity to charter schools in the same manner as political subdivisions and local agencies." *Warner*, 900 A.2d at 985. As such, we did not proceed to address the second prong of the *Snead* test.

---

[9] Act of March 10, 1949, P.L. 30, added by Section 1 of the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§17-1701-A–17-1751-A.

[10] Section 1727-A of the CSL provides:

> For purposes of tort liability, employes of the charter school shall be considered public employes and the board of trustees shall be considered the public employer in the same manner as political subdivisions and local agencies. The board of trustees of a charter school and the charter school shall be solely liable for any and all damages of any kind resulting from any legal challenge involving the operation of a charter school. Notwithstanding this requirement, the local board of directors of a school entity shall not be held liable for any activity or operation related to the program of the charter school.

24 P.S. §17-1727-A.

Although we cited various cases in which this Court and our Supreme Court "evaluated factors to determine whether the entity was so intertwined with the city that it was only logical that it be a local agency," we differentiated *Warner* from those cases, explaining that it evidenced "a clear legislative intent that an entity be covered by governmental immunity." *Id.* at 986–87. We continued, "In this case, unlike those just discussed, the *statute* provides that a charter school is entitled to immunity. This legislative intent is permissible because charter schools possess many of the same characteristics which we have just shown courts have looked at in determining that an entity is a local agency." *Id.* at 988. Thus, to the extent Plaintiff suggests that the *Warner* Court applied the fact-based inquiry present in the second prong of *Snead*, she misstates our holding.

Nonetheless, Plaintiff points to our Supreme Court's decision in *City of Philadelphia v. Cumberland County Board of Assessment Appeals* to support her proposition that the *Snead* factors must be applied to PVCS to determine whether it qualifies for immunity under the Tort Claims Act. 81 A.3d 24 (Pa. 2013). In that case, the Court reviewed a trial court's order finding that certain real property owned by the Girard Trust, for which the City of Philadelphia was trustee and which was leased by the Board of Directors of the City Trusts, was immune from local real estate taxation. *Id.* at 25. In analyzing this issue, the Supreme Court explained that the General Assembly did not intend to subject Commonwealth arms, agencies, subdivisions and municipalities to local real estate taxes and thereby burden the orderly processes of the government. Therefore, the Court went on to determine whether the Girard Trust and College, the latter of which was

9

the primary object of the trust, qualified as Commonwealth agencies for local tax immunity purposes by embarking upon a fact-based analysis.

Ultimately, the Court decided that the Trust, College, Board of City Trusts and holdings of the trust were immune from taxation but cautioned:

> Whether a Commonwealth agency such as the Board of City Trusts should properly continue to share in the immunity of the Commonwealth government is a matter that the General Assembly obviously can address and announce affirmatively. And, given the General Assembly's historical interest in, and concern with the Girard Entities, we believe it better that that policy decision be considered and decisively rendered by that body, rather than by a Court attempting to apply new doctrines to old, and rather unique, relationships.

*Id.* at 55.

We are not faced with such issues in the instant case, as it is clear from the CSL that the legislature intended to "grant immunity to charter schools in the same manner as political subdivisions and local agencies." *Warner*, 900 A.2d at 985.

Still, Plaintiff argues that even if governmental immunity applies to charter schools generally, it does not necessarily apply to *cyber* or *virtual* schools such as PVCS because they were not expressly contemplated in the CSL but are merely permitted by it. To this end, Section 1722-A(a) of the CSL provides: "A charter school may be located in an existing public school building, in a part of an

existing public school building, in space provided on a privately owned site, in a public building or in any other suitable location." 24 P.S. §17-1722-A(a).

While we agree that Section 1722-A(a) of the CSL does not expressly contemplate the creation of cyber schools, it also does not prohibit them. *Pennsylvania School Boards Association, Inc. v. Zogby*, 802 A.2d 6, 11 (Pa. Cmwlth. 2002) (*en banc*), *appeal denied*, 823 A.2d 146 (Pa. 2003). Where virtual schools otherwise meet the statutory requirements of the CSL, they qualify as valid charter schools. *Id.* ("The Charter School Law authorizes the creation of *any* charter school, as long as the entity complies with the requirements for a charter school set forth in the statute. Based on our reading of the statute, we see no reason why a cyber school cannot meet the statutory requirements."). Thus, the fact that a school is a virtual school as opposed to a bricks and mortar school is of no moment in analyzing whether the school is a charter school under the CSL. *See id.* at 11–12 ("[T]he statute allows a charter school to be located in 'any suitable location.' We believe these words are broad enough to encompass a cyber school…. [T]he [CSL] says *nothing* about teachers providing instruction in the traditional manner in physical classrooms in the old 'bricks and mortar' school buildings.").[11] Because *Warner* found that governmental immunity under the Tort

---

[11] Plaintiff attempts to distinguish PVCS from traditional schools by averring that it: "has contracted out various essential school functions to a national for-profit education corporation, K-12, Inc."; does not own traditional school facilities but rather has operating leases for its administrative facilities, resulting in its payment of $423,680 and $317,215 to third-party for-profit entities in 2012 and 2011, respectively; spent $588,743 and $790,799 on advertising for academic years 2011 and 2012, respectively; and expended over $5 million on administrative compensation during the 2008 academic year. (Appellant's Br., at 20–21.)

**(Footnote continued on next page…)**

11

Claims Act protects charter schools, and because *Pennsylvania School Boards Association* held that cyber schools qualify as charter schools where they otherwise satisfy the statutory requirements of the CSL, Plaintiff's argument that cyber schools should be analyzed under the second prong of the *Snead* test is without merit.

**B.**

With respect to 42 U.S.C. §1983, a plaintiff must satisfy two essential elements: (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Palmer v. Bartosh*, 959 A.2d 508, 514 (Pa. Cmwlth. 2008). Regarding the latter element, Plaintiff asserts two theories of liability. First, she argues that she made out a

---

**(continued…)**

First, these averments are not contained in the pleadings or attachments thereto and, thus, may not be relied upon in opposing Defendants' motion for judgment on the pleadings. *See Pfister v. City of Philadelphia*, 963 A.2d 593, 597 (Pa. Cmwlth. 2009); *see also Sanders v. Workers' Compensation Appeal Board (Marriott Corp.)*, 756 A.2d 129, 133 (Pa. Cmwlth. 2000) ("[B]riefs filed in this court are not part of the evidentiary record and assertions of fact therein which are not supported in the evidentiary record created below may not form the basis of any action by this court."). In any event, through these statements, Plaintiff apparently attempts to argue that *some* charter schools do not qualify for immunity. However, that issue has already been decided in *Warner ex rel. Warner v. Lawrence*, 900 A.2d 980 (Pa. Cmwlth. 2006) (*en banc*), and we decline the invitation to carve out an exception here on the basis that PVCS was engaging in activity not prohibited by the CSL—that is, "contracting out certain management and administrative responsibilities to a for-profit corporation." *West Chester Area School District v. Collegium Charter School*, 760 A.2d 452, 468 (Pa. Cmwlth. 2000), *aff'd*, 812 A.2d 1172 (Pa. 2002); *see* Section 1714-A(a)(5) of the CSL, 24 P.S. §17-1714-A(a)(5) ("A charter school established under this act is a body corporate and shall have all powers necessary or desirable for carrying out its charter, including, but not limited to, the power to… Make contracts and leases for the procurement of services, equipment and supplies.").

cognizable "separate but not equal" claim because she asserted that unequal services were provided by the Commonwealth in relation to cyber charter students and traditional students, and that this class distinction is based upon the exercise of parental, religious and free speech rights. Second, she states that PVCS was a custodian acting *in loco parentis* and, therefore, had a duty to account for her health, safety and wellbeing under the Eighth Amendment.

### 1. Equal Protection Claim

The First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Similarly, Article I, section 26 of the Pennsylvania Constitution states, "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, §26. In analyzing equal protection claims under the Pennsylvania Constitution, we employ the same standards and analysis that the United States Supreme Court has adopted with respect to equal protection claims under the United States Constitution. *Commonwealth v. Parker White Metal Co.*, 515 A.2d 1358, 1362–63 (Pa. 1986).

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Curtis v. Kline*, 666 A.2d 265, 267 (Pa. 1995). As we stated in *Myers v. Ridge*:

13

> In order to properly state an equal protection claim, a plaintiff must allege that he is receiving different treatment from that received by other similarly situated individuals. A plaintiff must show *intentional discrimination because of the membership in a particular class*, not merely that he was treated unfairly as an individual. Assertions of intentional disparate treatment must be supported by specific factual allegations. Conclusory contentions of constitutional violations without factual support do not establish a constitutional deprivation sufficient to withstand a demurrer.

712 A.2d 791, 799 (Pa. Cmwlth. 1998) (emphasis added) (internal citations omitted), *appeal denied*, 742 A.2d 173 (Pa. 1999).

In the instant case, Plaintiff has not averred intentional discrimination by a state actor. Plaintiff has alleged that as a result of her membership in the "virtual charter student" class as opposed to the "traditional student" class, she has received unequal treatment in the sense that she did not undergo the seventh grade scoliosis exam required by 28 Pa. Code §23.10(b). In this regard, Plaintiff argues, "[t]he [s]econd [a]mended [c]omplaint plainly asserts that separate but unequal services were provided, not by [PVCS] within its population, but by the Commonwealth in relation to cyber charter students and traditional students." (Appellant's Br., at 27.)

However, the Commonwealth is not a party to this action, and even if it was, Plaintiff has not alleged that the Commonwealth *intentionally discriminated* against her *because of* her status as a virtual, charter school student. *See Urbanic v. Rosenfeld*, 616 A.2d 46, 55 (Pa. Cmwlth. 1992) (*per curiam*), *aff'd*, 631 A.2d

14

596 (Pa. 1993). ("When bringing a claim that a violation of the Equal Protection Clause occurred, plaintiffs cannot establish such a violation merely by showing they are treated differently than others because of who they are. Plaintiffs claiming such a violation must establish that they are being treated differently, regardless of who they are as a person, because they belong to a certain classification of people causing those acting under color of state law to treat them differently than they would other citizens in general."). Indeed, 28 Pa. Code §23.10(b) applies with equal force to students of public and charter schools, regardless of whether they are cyber schools or otherwise. The same deficiencies also prove fatal to the extent Plaintiff suggests that PVCS and/or its employees violated her equal protection rights by failing to administer the exam while Plaintiff was in seventh grade and by failing to maintain the associated records. Again, Plaintiff has not averred *intentionally discriminatory* conduct.[12]

Additionally, Plaintiff seeks to impose liability upon PVCS for the conduct of School Nurse Plusa and Nursing Director Tancredi through the theory of custom or usage. Simply stated, this theory is used "[t]o impose liability on a local government" when plaintiffs establish that "a practice by the local government has been in existence for a sufficient length of time that those with the

---

[12] The requirement that Plaintiff establish her membership in a "class" does not preclude the existence of a class consisting only of one person. *Urbanic v. Rosenfeld*, 616 A.2d 46, 55 (Pa. Cmwlth. 1992) (*per curiam*), *aff'd*, 631 A.2d 596 (Pa. 1993). "For example, if there is one Eskimo in a community and the police fail to respond to his or her complaints because he or she is an Eskimo, then there would be an equal protection violation even though there is only one person in that "'class.'" *Id.* However, class of one claims, like other equal protection claims, still require that the complainant be intentionally treated differently from others similarly situated. *Uniontown Newspapers, Inc. v. Roberts*, 839 A.2d 185, 198 (Pa. 2003).

ultimate responsibility knew or should have known that such a practice has become customary." *Urbanic v. Rosenfeld*, 616 A.2d at 56–57. The second amended complaint does not discuss any such custom or usage developed by PVCS, and a review of the complaint makes clear that Plaintiff has not asserted this theory of liability.

### 2. Eighth Amendment Claim

Finally, Plaintiff contends that PVCS became the custodian of Plaintiff and acted *in loco parentis*, thereby obligating it to account for her health, safety and welfare due to compulsory school attendance laws.[13] While Plaintiff does not state in her brief which constitutional or federal statutory right this duty allegedly implicates, her second amended complaint clarifies that this claim is brought pursuant to the Eighth Amendment: "Defendants also violated [P]laintiff's Eighth Amendment Rights by subjecting Plaintiff to the prospect of severe preventable injury through gross medical negligence in a custodial care setting." (R.R. at 147a–148a.)

The Eighth Amendment states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. This provision has been interpreted as requiring state actors to

---

[13] *See* Section 1327(a) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1327(a) ("Except as hereinafter provided, every child of compulsory school age having a legal residence in this Commonwealth, as provided in this article, and every migratory child of compulsory school age, is required to attend a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language.").

16

provide medical care to individuals in its custody, including prisoners and the involuntarily committed. As the United States Supreme Court explained in *Estelle v. Gamble*:

> Our more recent cases…have held that the Amendment proscribes more than physically barbarous punishments. The Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency…," against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain."
>
> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."

429 U.S. 97, 103–04, 97 S. Ct. 285, 290–91 (1976) (internal citations omitted) (internal footnotes omitted); *see also DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200, 109 S. Ct. 998, 1005 (1989) ("[W]hen the

17

State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.").

However, the Third Circuit has already clarified that the Commonwealth's compulsory attendance law, in conjunction with a school's *in loco parentis* authority, does not result in schools' restraint of students' liberty interests to the extent that it renders them unable to care for themselves and thereby implicates the Eighth Amendment. In *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, a high school student alleged that she was molested by other students while in class and filed, among other claims, an action against her school and individually-named teachers and officials, asserting that the defendants failed to protect her from the other students despite the existence of a special relationship established by the Commonwealth's compulsory attendance laws. 972 F.2d 1364, 1366, 1368 (3d Cir. 1992).[14]

In analyzing whether such a relationship existed, the Third Circuit emphasized that in the context of a public school, students' parents decide where they will be educated—in public schools, private schools, vocational schools or at home. This holds true even if the option, for one reason or another, is limited.

---

[14] Although the claim was initiated by two students, the court determined that the argument was inapplicable to one of the plaintiffs who was 17 at the time of the alleged incidents because the compulsory attendance laws only applied up until a student turned 17 years old.

18

Further, the court highlighted that teachers are not among the individuals responsible for a child's welfare under the Child Protective Services Law[15] regardless of their *in loco parentis* status, and that students remain residents of their homes.

Thus, the court concluded that "parents remain the primary caretakers, despite [the student's] presence in school" and that by simply compelling the plaintiff to attend class and authorizing school officials to engage in disciplinary control over her, the school defendants "did not restrict [the plaintiff's] freedom to the extent that she was prevented from meeting her basic needs," because "the school defendants' authority over [her] during the school day cannot be said to create the type of *physical custody* necessary to bring it within the special relationship noted in *DeShaney*." *Id.* at 1372 (emphasis added). As such, the Third Circuit rejected the analogy between school students and prisoners or the involuntarily committed for purposes of analyzing a Section 1983 claim.

While the current appeal arises in the context of a virtual charter school, the court's rationale in *D.R.* is equally applicable. Indeed, Plaintiff's parents specifically elected to enroll Plaintiff in PVCS, regardless of the basis for their reasoning. The second amended complaint has not averred any facts suggesting that anyone other than Plaintiff's parents remained responsible for her wellbeing and, in this case, even more than in *D.R.*, Plaintiff remained a resident of

---

[15] Section 6303 of the current Child Protective Services Law defines "[p]erson responsible for the child's welfare" as "[a] person who provides permanent or temporary care, supervision, mental health diagnosis or treatment, training or control of a child in lieu of parental care, supervision and control." 23 Pa. C.S. §6303.

her home as she did not attend a traditional brick and mortar school. Plaintiff has not alleged that she did not have contact with those outside of her school, and she did not remain physically present in school, even during the school day. In other words, Plaintiff has failed to plead facts sufficient to establish that PVCS or its teachers created the type of physical custody necessary to establish a special relationship between Plaintiff and Defendants. The fact that Plaintiff attended her seventh grade exam as a student of PVCS, in and of itself, is insufficient to create this relationship. *See D.R. by L.R.*, 972 F.2d at 1366, 1372 (finding no such relationship despite the fact that the plaintiff alleged that she was *in school* at the time she was molested). Therefore, Defendants are entitled to judgment as a matter of the law on Plaintiff's Eighth Amendment claim.

Accordingly, we affirm the trial court's orders dismissing Plaintiff's negligence claim and entering judgment on the pleadings in favor of Defendants.

DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hannah Babb,               :
                Appellant   :
                             :
        v.              :
                             :
Lynn Plusa, RN BSN, CSN and     :
Debbie Tancredi, RN and        :
Pennsylvania Virtual Charter School  :   No. 1199 C.D. 2015

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>January</u>, 2016, the order of the Court of Common Pleas of Centre County in the above-captioned case is affirmed.

---
DAN PELLEGRINI, President Judge